JOSHUA FLECHA and LUIS ACEVEDO,

Plaintiffs,

v.

METAL SYSTEMS, LLC and

PIONEER ROOFING, LLC,

Defendants.

Case No. 16-CV-800

**REPLY BRIEF OF PIONEER ROOFING, LLC
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pioneer Roofing, LLC ("Pioneer") submits this reply brief in support of its motion for summary judgment on the issue of Pioneer's status as an "employer" under the Fair Labor Standards Act ("FLSA") and Wisconsin law. For the reasons explained in Pioneer's initial brief, and below, Pioneer's motion should be granted.

**PRELIMINARY STATEMENT**

"Summary judgment is not a time to be coy[.]" *Sommerfield v. City of Chicago,* No. 1256, 2017 WL 2962243, at *3 (7th Cir. 2017)(citing Fed. R. Civ. P. 56(c)(1)(A)). Rather, at this "put up or shut up moment" in the lawsuit, Plaintiffs were required to "marshal and present the court with the evidence [they] contend will prove [their] case." *Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010)(noting further that "by evidence, we mean evidence on which a reasonable jury could rely.")

To say that Plaintiffs have failed to satisfy this burden would be a tremendous understatement. Plaintiffs failed to even respond to approximately half [1] of Pioneer's proposed findings of fact, many of which demonstrate, as a matter of law, that Pioneer was not a joint employer of Plaintiffs. To the limited extent that Plaintiffs even purported to respond to Pioneer's proposed findings of fact, their responses were nonresponsive, conclusory, and unsupported by admissible evidence. Thus, for the reasons explained in Pioneer's initial brief and below, this Court should grant Pioneer's motion for summary judgment..

## ARGUMENT

In order to find a joint employment relationship, there must be some evidence that each alleged employer "exercises control over the working conditions of the employees." *See, e.g., Pope v. Espeseth, Inc.,* No. 15-cv-486-jdp, 2017 WL 108081, at *4 (W.D. Wis. Jan. 11, 2017); *Moldenahuer v. Tazewell-Pekin Consolidated Communications Center,* 536 F.3d 640, 644 (7th Cir. 2008). Not just any arbitrary exercise of control is significant; rather, the authority exercised by the alleged joint employer "must be related to the violation", *Schneider v. Cornerstone Pints, Inc.,* 148 F. Supp. 3d 690, 969-98 (N.D. Ill. 2015), and must be such that it results "in effective control of the terms and conditions of [plaintiffs] employment." *See, e.g., Sanchez v. Simply Right, Inc.,* No. 15-cv-00974-RM-MEH, 2017 WL 2222601, at *13 (D. Colo. May 22, 2017)("Even if somehow Cinemark did minutely control plaintiffs' work details, plaintiffs also fail to explain how that resulted in effective control of the terms and conditions of their employment.").

As explained below, Plaintiffs have offered no admissible evidence to demonstrate that Pioneer controlled the terms and conditions of their employment or exercised control in a way that

---

[1] Plaintiffs failed to respond to 53 of Pioneer's 102 proposed findings of fact.

related to their alleged wage and hour violations. Moreover, Plaintiffs have not offered any admissible evidence to demonstrate that Pioneer exercised any other type of control over Plaintiffs. Accordingly, Pioneer's motion for summary judgment should be granted.

> **1.** *Pioneer did not exercise control over the terms and condition of Plaintiffs' employment.*

Plaintiffs do not dispute that Pioneer was not involved in any way with Metal Systems' decision to hire Plaintiffs; that Pioneer does not receive or review Metal Systems' job applications; and that Pioneer is not notified or consulted when Metal Systems hires or fires an employee. Nevertheless, Plaintiffs contend that "[t]here are genuine factual disputes as to Pioneer's power to hire, fire, and determine the compensation of the Plaintiffs." (See Pl. Br. p. 14.) There is no evidence to support this argument.

With respect to hiring, Plaintiffs contend that Pioneer possessed authority over Metal Systems' hiring process based solely on the following paragraphs in Joshua Flecha's declaration:

> 14. In January or February of 2017, after I quit my employment with Metal Systems, I contacted Mr. Staven about working for Metal Systems again. Mr. Staven told me that Metal Systems had plenty of available work, but he was not sure whether "they" would work with me. I understood that by "they", Mr. Staven was referring to Pioneer.
>
> 15. I then sent Mr. Staven a text message, asking him that since I was seeking employment with Metal Systems, why it mattered whether Pioneer wanted to work with me. Mr. Staven's response stated that Metal Systems and Pioneer were separate employers, but did not in any way explain his earlier remark that Metal Systems could not hire me because he was not sure whether "they" would work with me.

(Dkt. # 48, p. 4.) Flecha offers no specific facts to explain why he concluded that Stavin's alleged reference to "they" meant "Pioneer." This conclusion amounts to speculation at best. Even more fundamentally, however, Stavin's alleged statements and text message exchange with Flecha

3

constitutes inadmissible hearsay. Contrary to Plaintiffs' argument otherwise, they are not admissions by a party opponent because they are not being offered against Staven or Metal Systems; rather Plaintiffs are attempting to use those statements against Pioneer. *See* Fed. R. Evid. 801(d)(2).

Plaintiffs' claim that there is a genuine issue with respect to whether Pioneer had the power to fire Metal Systems employees is equally unsupported. Indeed, Pioneer's corporate designee deposition confirms there is no genuine dispute that Pioneer lacked any such authority. Pioneer's corporate designee testified in relevant part:

> Q: Can Pioneer prohibit a subcontractor's employee from working on its job site?
> A: No.
> Q: What if a person poses a safety hazard?
> A: Well, then we'd have to be informed of that.
> Q: And if Pioneer is informed of that, what would it do. If Pioneer was informed one of the subcontractor employees creates a safety hazard on a job site—
> A: Uh Huh.
> Q: -- what would Pioneer do?
> A: Well, we'd have one of our – whoever was informed, like a supervisor or our safety director would be giving Mark Staven a call to get the issue resolved.
> A: To get the issue resolved would mean you relay to Mr. Staven that this individual is creating a safety hazard, right?
> A: Whatever – yeah, whatever the situation is, yeah.
> Q: And the resolution may lead to the removal of the employee from the job site?
> A: It could. Generally you just want to correct the issue.
> Q: But if it's not corrected, would Pioneer insist for that person to be removed?
> [Objection]
> A: I think we're more focused on correcting the issue of someone doesn't have the proper safety equipment or something. I mean typically – well, typically …
> Q: What if there was a fire on your job site?
> A: What?
> Q: What if there was a fire on your job site—
> A: That wouldn't be very good.
> Q: --due to a subcontractor's employees, would Pioneer have the ability to remove those employees from the job site?

4

>A: No, I don't think so.  I think we'd have to throw Metal Systems off the job.
>Q: Would you ever give Metal Systems the choice of either taking the employee off and stay on the job?
>A: No.
>Q: Have you ever thrown a subcontractor off the job?
>A: Thrown a subcontractor-ever?  Geez, that's a long time.  Not that I can recall.
>Q:  Has Pioneer ever raised any complaints about a subcontractor's employee to that subcontractor?
>A:  Raised any complaints about an employee of a subcontractor?
>Q: To the subcontractor.
>A:  To that subcontractor?  If there was a safety issue or if it violated the company policy where we're working, you know, smoking on the job or something, we would bring it up to management of Metal Systems.
>Q: And then you would ask Metal Systems to deal with it?
>A: We expect them to, yeah.
>Q: And dealing with it may involve removing the employee from the job site?
>A: It's up to them.  They just have to solve the problem, that's all.
>Q: But if they don't solve the problem to your satisfaction, the entire company may be thrown off the job site?
>A: That's possible.

(Pioneer Corporate Dep.(Dkt. 50), pp. 48-50.)

Finally, Plaintiffs' claim that Pioneer "has the final say on the methodology used by Metal Systems to pay its employees" is likewise based on vague hearsay.  Specifically, the only materials that Plaintiffs cite in support of this assertion is paragraph 13 of Plaintiffs' declarations, which state:

>13.  Whenever I had a complaint about how I was paid, such as that I was not paid the prevailing wage on school or hospital projects, I would complain to Mark Staven.  Mr. Staven would tell me that he would relay my question to Brian Monogue.  On each of these occasions, a day or two after our initial conversation Mr. Staven would tell me that Mr. Monogue had stated that I was being paid

5

>correctly, and that therefore there was nothing he (Mr. Staven)
>could do about how I was being compensated.

(Flecha Decl., ¶ 13, Acevedo Decl., ¶ 13.)  As explained above, Staven's alleged statements to Plaintiffs are hearsay and do not qualify as admissions by a party opponent.  Even if Staven's statements were admissible, however (they are not), they are far too vague to give rise to an inference that Pioneer possessed any authority over how Metal Systems paid its employees—particularly in light of the myriad facts that Plaintiffs do not dispute regarding Pioneer's lack of involvement in determining how Metal Systems employees are paid.

In addition to the total lack of evidentiary support for Plaintiffs' claim that Pioneer had any authority to hire, fire, or set the compensation of Metal Systems employees, Plaintiffs have not disputed the vast majority of facts showing that Pioneer did no exercise any influence or control over the terms and conditions of their employment.  Among many other examples, Plaintiffs have not disputed that Pioneer has never been involved with recording, reviewing, verifying, or approving time worked by Metal Systems, that Metal Systems employees contact Metal Systems if they will be absent from work, want to request a schedule change, or have any other scheduling needs, or that Metal Systems trains its own employees and Pioneer does not train or provide training materials or policies of any kind to Metal Systems or its employees.

In sum, in light of Plaintiffs' inability to produce any admissible evidence to show that Pioneer effectively controlled the terms and conditions of their employment, Pioneer is entitled to summary judgment as a matter of law.

### 2. *Plaintiffs' conclusory and factually unsupported assertions are insufficient to give rise to a genuine dispute of material fact.*

Given the lack of any admissible evidence showing that Pioneer had the power to hire and fire Metal Systems employees; to supervise or control the work schedules or conditions of payments

to Metal Systems employees; to determine the rate or method of payment to Metal Systems employees; or that Pioneer maintained employment records regarding Metal Systems employees, Plaintiffs instead attempt to show that Pioneer "oversaw and supervised the day to day work of Metal Systems' employees." (*See* Pl. Br. at 2.) This argument, like Plaintiffs' other arguments, is unsupported by any admissible evidence; however, even if it were supported (it is not) the sorts of control alleged by Plaintiffs are insufficient to give rise to a joint employer relationship.

In opposition to Pioneer's motion, Plaintiffs submitted largely identical declarations replete with vague, conclusory assertions, such as the following:

> 9. Pioneer employees would also frequently tell us, again either directly or by telling Strube and/or Sartin within our hearing, that they did not like the work that we had done. Complaints may include that they did not like the distance between nails for the sheetmetal that we installed along the sides of the roof, that they did not like the fact that we used one bent piece of sheetmetal rather than two pieces of connected sheetmetal to cover a protrusion or skylight, or that they simply did not like how a piece of work looked. Each time Strube and/or Sartin would tell us to redo the work as Pioneer requested even though we sometimes disagreed with Pioneer's request, and even though we had performed the work in a manner consistent with Metal Systems' work processes.

> 10. Pioneer's job superintendents would sometimes watch us work. They would then instruct us on matters such as how to space the nails when we secure the sheetmetal to the roof, how many pieces of sheetmetal to use to cover a protrusion or skylight, and how to secure the sheetmetal that is used to cover a protrusion or skylight. They would also tell us to redo work that they said looked ugly. We would then redo the work, even though we sometimes disagreed with

MIL-28645296-2

> Pioneer's request, and even though we had performed the work in a manner consistent with Metal Systems' work processes.

(Flecha Decl., ¶¶ 9, Acevedo Decl., ¶¶ 9-10.)[2] Throughout these and each of the other assertions that Plaintiffs make throughout their declarations, Plaintiffs do not identify which or precisely how many jobs that they worked on, which particular Pioneer employees they claim were involved, when the alleged incidents being described occurred, or how many times. Plaintiffs offer no description of any of the alleged communications or any other facts to substantiate their conclusory assertions regarding what "would" occur, or whether with what frequency. Indeed, it is impossible to determine whether Plaintiffs' assertions are based on personal knowledge or hearsay, much less whether an hearsay exception applies. *See also Mays v. Grand Daddy's, LLC,* No. 14-cv-461-SLC, 2015 WL 4373565, at *3-4 (W.D. Wis. July 15, 2015)(finding that conclusory statements in declaration were insufficient to defeat a motion for summary judgment, reasoning that the statements were "so devoid of specifics as to raise significant doubt whether it is really based on her personal knowledge").

Vague, conclusory assertions of the type made in Plaintiffs' declarations are insufficient raise a genuine issue of material fact. *First Commodity Traders, Inc. v. Heinold Commodities, Inc.,* 766 F.2d 1007, 1011 (7th Cir. 1985)("Conclusory statements in affidavits opposing a motion for summary judgment are not sufficient to raise a genuine issue of material fact."); *Jones v. Merchants Nat'l Bank & Trust Co.,* 42 F.3d 1054, 1057 (7th Cir. 1994)("Self-serving assertions without factual support in the record will not defeat a motion for summary judgment."). After

---

[2] As detailed in Pioneer's response to Plaintiffs' proposed findings of fact and reply in support of Pioneer's proposed findings of fact, nearly all of the allegations in both of Plaintiffs' declarations are conclusory or suffer from some evidentiary defect. The Court should disregard or strike both declarations in their entirety.

all, the object of summary judgment procedure "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990).

Even if Plaintiffs' conclusory, factually unsupported assertions in their declarations were sufficient to give rise to a genuine dispute (they are not), they are still insufficient, as a matter of law, to support a finding that Pioneer was a "joint employer" under the FLSA or Wisconsin law. All of the types of supervision that Plaintiffs allege was exercised (at unspecified times, by unspecified individuals) relate to instances of a prime contractor ensuring that the requirements of the subcontract were being met. Controlling the details of Plaintiffs' performance of work under a subcontract is not the same thing as controlling the terms and conditions of their employment. Clearly, prime contractors are entitled, in fact obligated, to insist on compliance with specifications by their subcontractors. Such insistence cannot be the basis for inferring a joint employer relationship. *See, e.g., Sanchez,* 2017 WL 2222601, at *13 ("Even if somehow Cinemark did minutely control plaintiffs' work details, plaintiffs also fail to explain how that resulted in effective control of the terms and conditions of heir employment."); *Jacobsen v. Comcast Corp.,* 740 F. Supp. 2d 683, 689-92 (D. Md. 2010)("The nature of the control exercised by [a] putative joint employer is the key element in this analysis. This factor does not contemplate the generic control exercised by a supervisor over an independent contractor. Therefore, detailed instructions and a strict quality control mechanism will not, on their own indicate an employment relationship"); *Zhao v. Bebe Stores, Inc.,* 247 F. Supp. 2d 1154, 1160 (C.D. Cal. 2003)(monitoring putative employees for quality control purposes was insufficient to give rise to a joint employer relationship, where the alleged employer did not schedule work, control shifts or specify individual assignments). Even the Fourth Circuit's decision in *Salinas v.*

*Commercial Interiors, Inc.,* 848 F.3d 125 (4th Cir. 2017), which Plaintiffs cite throughout their brief, acknowledged that "a general contractor that sets the start and end times for all work on a jobsite establishes site-wide safety protocols may not be a joint employer absent additional evidence of the general contractor's codetermination of the essential terms and conditions of the workers' employment." *Id.* at 142n.10.

In sum, Plaintiffs' conclusory assertions in their declarations are not supported by any specific facts, and should be disregarded. However, even if this Court were to consider them, the type of supervision and control Plaintiffs assert was exercised does not amount to control over the terms and conditions of Plaintiffs' employment sufficient to support a finding that Pioneer was Plaintiffs' joint employer.

### 3. *Plaintiffs' remaining arguments lack merit.*

Plaintiffs make a variety of other arguments throughout their brief in opposition to Pioneer's motion, none of which has merit.

First, Plaintiffs characterize the Supreme Court's decision in *Rutherford Food Corp. v. McCombie,* 331 U.S. 772, 730 (1947) as "fatal" to Pioneer's motion, and urge this Court to find that Pioneer was a "joint employer" on the grounds that "the work performed by Plaintiffs was an integrated part of, rather than separate from Pioneer's own roof installation work" (Pl Br. p. 3.) and because, according to Plaintiffs, "on this record a reasonable fact finder can conclude that Metal Systems lacked viable economic status, so that without work from Pioneer it cannot maintain a viable field installation crew." (Pl. Br. p. 9.) These arguments, like Plaintiffs' other arguments, are legally and factually unsupported.

As a threshold matter, the *Rutherford* decision is factually distinguishable. In that case the Supreme Court held that a group of meat boners, working as "independent contractors" in a

10

slaughtering plant were actually employed by the slaughterhouse.  *Id.*  at 730-31.  Significant to the Court's decision was its finding that the boners "had no business organization that could or did shift as a unit" and that the boning work "was more like piecework than an enterprise that actually depended for success upon the initiative, judgment, or foresight of the typical independent contractor."  *Id.*  In particular, the slaughterhouse repeatedly replaced the subcontractor who directly employed the boners, and yet the same employees continued performing work for the slaughterhouse despite the changeover.  *Id.* at 725.  These facts demonstrated that the boners were actually tied to the slaughterhouse, not their direct employer.

Many courts have held that *Rutherford* is of limited application outside the context of a production line.  *See, e.g.,  Dalton v. Omnicare, Inc.,* 138 F. Supp. 3d 709, 719 (N.D. W. Va. 2015)(noting that in the …years since *Rutherford* was decided, courts in this Circuit have repeatedly distinguished it based on its unique facts.");  *see also, e.g,  Jean-Louis v. Metropolitan Cable Communications, Inc.,* 838 F. Supp. 2d 133, 134 (SDNY 2011) (analysis of integration of operations "might apply with somewhat less vigor where, as here, the parties are engaged in providing a service rather than manufacturing a process.");  *Lepowski v. Telatron Mfg. Grp., Inc.,* 766 F. Supp. 2d 572, 580n. 2 (W.D. Pa. 2011)(examination of "the extent to which plaintiffs performed a discrete line-job that was integral to [the putative joint employer's] process of production" has as limited application outside of the context of a product manufacturing line."). It is undisputed that Metal Systems provides a service to multiple customers, so *Rutherford* is prima facie inapplicable.

Moreover, in contrast to the boners in *Rutherford,* it is undisputed that Pioneer and Metal Systems are separate businesses, with separate facilities, and that Metal Systems performs a variety of different jobs for a variety of different customers.  (*See* Pioneer PFOF 4)("Metal

11

Systems completes numerous projects for a variety of different clients throughout Wisconsin. For example, during the period beginning December 1, 2013 through May 17, 2017, Metal Systems worked on 811 such projects for approximately 50 different clients."). Plaintiffs do not claim that they worked for Pioneer in circumstances other than when Metal Systems had a subcontract with Pioneer. In this context, "there is no reason why work being integral is more likely to result in an employment relationship, than the lack of one." *Sanchez,* 2017 WL 2222601, at *14. In any event, Plaintiffs have offered nothing other than speculative, conclusory, and inadmissible assertions in support of their claims that Metal Systems and Pioneer are "integrated" or that Metal Systems is dependent on Pioneer.

Second, the Plaintiffs' reliance on the Fourth Circuit's recent decision in *Salinas v. Commercial Interiors, Inc.,* 848 F.3d 25 (4h Cir. 2017) is misplaced. In that decision, the Fourth Circuit adopted a different test for joint employment than that used within the Seventh Circuit, which shifts away from a focus on control. Thus, the decision is inconsistent with the Seventh Circuit's law and should be rejected by this Court. *See Moldenhauer,* 536 F.3d at 643-44. Moreover, the *Salinas* decision is factually distinguishable from this case: the *Salinas* court observed that under the undisputed facts before it the putative joint employer "would amount to Plaintiffs' joint employer under the four-factor *Bonnette* test [3][.]". *Salinas,* 848 F.3d at 146n.12. As explained above, Plaintiffs have not established any facts that weigh in favor of a finding that Pioneer was their joint employer under the test used by courts in the Seventh Circuit.

Third, Plaintiffs contend that Pioneer was their joint employer pursuant to "29 USC [*sic*] 791.2." However, the Seventh Circuit Court of Appeals has explained that this regulation does

12

not replace the analysis of whether the purported joint employer had the power to hire and fire, supervised and controlled employee work schedules or conditions of payments, determined the rate and method of payment, or maintained employment records. *See Moldenhauer v. Tazewell-Pekin Conol. Communications Center,* 536 F.3d 640, 643-44 (7th Cir. 2008)(noting that similar regulation under the FMLA was of limited utility in determining whether a joint employer relationship existed, explaining that "this regulation, which focuses on whether multiple entities exercise some control over the employee, does not answer the question before us and does not even provide much guidance in determining the parameters of what constitutes a joint-employment relationship."). This Court should not disregard the cases setting forth the standard for determining whether a joint employment relationship is present, as Plaintiffs propose.

Fourth, Plaintiffs contend Pioneer was Plaintiffs' joint employer under Wisconsin law. However, as Pioneer noted in its initial brief, the standards for determining "joint employer" status under Wisconsin and federal law are the same. Plaintiffs do not propose any different standard. Thus, Plaintiffs' failure to establish a joint employment relationship under the FLSA (as explained in Pioneer's initial brief and above) is fatal to their claim that Pioneer was their employer under Wisconsin law. *See, e.g., Pope,* 2017 WL 108081, at *5.

Finally, Plaintiffs contend that Pioneer may be liable for alleged violations of Wisconsin's prevailing wage law simply by virtue of its status as a prime contractor to Metal Systems from time to time. As a threshold matter, Plaintiffs do not identify any particular jobs for which Metal Systems was a subcontractor of Pioneer that they contend to be at issue. Regardless, Pioneer's motion for summary judgment is on the issue of Pioneer's status as an

---

[3] The *Bonnette* test analyzes the same four factors as those identified by the Seventh Circuit in (footnote continued)

13

"employer" under the FLSA and Wisconsin law. To the extent that Plaintiffs are claiming violations that are not predicated on Pioneer's status as an employer, they are not at issue in this motion. However, if this Court determines that Pioneer is not Plaintiffs' employer and dismisses Plaintiffs' Wisconsin wage and hour and FLSA claims, this Court should decline to exercise supplemental jurisdiction over Plaintiffs' prevailing wage claim. *See, e.g., Wicke v. L&C Insulation, Inc.,* No. 2013 WL 5276112, at *4 (W.D. Wis. Sept. 18, 2013); *La Riva v. Houlihan Smith & Co., Inc.,* 848 F. Supp. 2d 887, 890 (N.D. ll. 2012)("[G]iven *Ervin's* implicit recognition that substantial predominance may be established by a significant enough disparity between the respective number of participants in a [state law] class action and an FLSA *collective* action, it follows *a fortiori* that substantial predominance may be established by the more significant disparity between a [state law] class action and an FLSA individual action.").

## CONCLUSION

For the reasons explained in Pioneer's initial brief and above, Pioneer's motion for summary judgment should be granted.

Dated this 17th day of July, 2017.

>
> HUSCH BLACKWELL LLP
> Attorneys for Defendant Pioneer Roofing, LLC
>
> /s/Emily Constantine
> William E. Hughes
> State Bar No. 1014965
> Emily A. Constantine
> State Bar No. 1087257
> Jeffrey A. McIntyre
> State Bar No. 1038304

---

*Moldenhauer.*

555 East Wells Street, Suite 1900
Milwaukee, Wisconsin 53202-3819
Telephone: 414-273-2100
Fax: 414-223-5000
Email: William.Hughes@huschblackwell.com
Email: Emily.Constantine@huschblackwell.com
Email: Jeffrey.McIntyre@huschblackwell.com