IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOSHUA FLECHA and LUIS ACEVEDO,

                                                                             OPINION AND ORDER

                   Plaintiffs,

                                                                         16-cv-800-bbc

     v.

METAL SYSTEMS, LLC and
PIONEER ROOFING, LLC,

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiffs Joshua Flecha and Luis Acevedo brought this putative class and collective action on behalf of themselves and other similarly situated individuals and employees of defendants Metal Systems, LLC and Pioneer Roofing, LLC. According to plaintiffs, defendants failed to compensate them for certain work, failed to compute their overtime pay properly and failed to pay them prevailing wages in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and Wisconsin state law.

Now before the court is defendant Pioneer Roofing, LLC's motion for summary judgment, dkt. #30, as well as plaintiffs' motion for leave to file a sur-reply brief in opposition, dkt. #55. Although sur-replies are disfavored as a general rule and some of the contentions in plaintiffs' motion are questionable, I will consider their additional brief, dkt. #55-1, because plaintiffs are entitled to respond to some of the arguments that were not raised until defendant filed its reply brief. Additionally, because defendant Pioneer Roofing,

1

LLC, is the only defendant moving for summary judgment at this time, all further references to "defendant" in this order will be to defendant Pioneer only.

I am granting defendant's motion for summary judgment in part and denying it in part. Because the undisputed facts demonstrate that defendant was not plaintiffs' employer within the meaning of applicable federal and state law, plaintiffs' Fair Labor Standards Act claims as well as their claims for Wisconsin overtime and straight time pay will be dismissed as to defendant. However, I am denying the motion with respect to the Wisconsin prevailing wage claim and allowing plaintiffs to proceed on that claim against defendant as a non-employer general contractor.

From the parties' proposed findings of fact and the record, I find that the following facts are not subject to genuine dispute, except as indicated otherwise.

UNDISPUTED FACTS

Between 2014 and December 2016 (the exact dates are unclear), plaintiffs Joshua Flecha and Luis Acevedo were employed by defendant Metal Systems, LLC, to perform hourly work installing sheet metal on roofs. During that time period, defendant Metal Systems worked on more than 800 projects for approximately 50 different clients throughout the state of Wisconsin.

Defendant is in the business of providing design, installation, repair and other commercial and industrial roof services. It has engaged Metal Systems frequently as a subcontractor for projects requiring the fabrication and installation of sheet metal roofing

components. The companies have partially overlapping ownership and management: three of Metal Systems' five individual "members," each of whom owns a 20% stake in the company, are owners or employees of Pioneer. Brian Boettcher, defendant's managing member and president, is a member of Metal Systems. However, Mark Staven, the managing member of Metal Systems, is not an owner of defendant or involved in its management.

When Metal Systems performs subcontracted work on a project for defendant, it typically does so within the scope of work as defined by a prime contract between defendant and the property owner or original project general contractor. Between November 2014 and December 2016, defendant used Metal Systems as a subcontractor for 110 projects. Most of defendant's projects during that time did not involve any subcontracting work by Metal Systems. (The parties dispute exactly how much of defendant's work involved Metal Systems, but they appear to agree that defendant engaged Metal Systems on something less than 22% of its total number of projects during that time period. Dft.'s Reply to Plts.' Resp. to Dft.'s PFOF, dkt. #54 ¶¶ 15 and 40.)

Defendant estimates that Metal Systems works on between 40% and 60% of defendant's projects that require sheet metal work. Typically, Metal Systems provides its own personnel, equipment and materials when performing work for clients, even when working on the job sites of clients. (Plaintiffs say that they and other Metal Systems employees would use defendant's lifts and other equipment while working on one of defendant's jobs sites, but defendant disputes this. Both Metal Systems and defendant agree

3

that defendant's personnel were present on job sites where plaintiffs and other Metal Systems employees were installing sheet metal and would oversee, direct or provide particular instructions or feedback on the sheet metal work, but the parties dispute the scope and details of this supervision.  Id. ¶ 44; Dft.'s Resp. to Plts.' Addl. PFOF, dkt. #53 ¶¶ 11-15.)

Under the subcontracts between the two companies, defendant does not have the authority to hire, fire or discipline any individual employed by Metal Systems.  Defendant's managing member and president, Brian Boettcher, is also a member of Metal Systems, but he does not determine or participate in the development of Metal Systems' work rules or policies and was not involved in any decisions relating to Metal Systems' employment matters, such as hiring, firing or compensation.

Under Metal Systems' operating agreement, only managing member Mark Staven or his designee has the authority to perform a range of customary business activities, including hiring and firing officers, employees or other personnel.  Neither Staven nor fellow member Robert Epping is an owner or employee of defendant and neither is responsible for hiring and screening Metal Systems employees or determining their rate of pay.  Defendant is not involved in hiring, screening or reviewing candidates for employment with Metal Systems.  (Defendant and Metal Systems say that Staven and Epping are the *only* members involved in Metal Systems' management and operation.  Plaintiffs dispute this.  They say that accountant Brian Monogue was an owner and employee of defendant and also performed some management, operating and accounting functions for Metal Systems, including calculating and determining employee compensation.  Dft.'s. Reply to Plts.' Resp. to Dft.'s

4

PFOF, Dkt. #54 ¶¶ 6-9.)

Staven, Epping and other Metal Systems employees are responsible for monitoring, tracking and recording the hours worked by Metal Systems' employees on work sites and the rate of pay for the work. Defendant has never been involved in the recording, reviewing, verifying or approving time worked by plaintiffs or any other Metal Systems employees. Metal Systems does not provide defendant names or other identifying information about the individual employees who will be working on particular projects or job sites worked on by defendant. Defendant does not maintain any employment or personnel records for plaintiffs or any other Metal Systems employees. Defendant does not provide any compensation or benefits to Metal Systems employees who work on Metal Systems' job sites.

Depending on the time of year, Metal Systems employs between three and eight full or part-time employees. During their employment with Metal Systems, plaintiffs Flecha and Acevedo spent what they call a significant amount of their time working on defendant's projects and job sites. (The parties dispute the proportion of time plaintiffs devoted to defendant's projects, but each plaintiff estimates he spent at least 80% of his time on defendant's projects. Dft.'s. Resp. to Plts.' Add'l PFOF, Dkt. #53 ¶ 1.)

Neither defendant nor any of its personnel were involved in Metal Systems' decisions to hire plaintiffs Flecha or Acevedo, to set their rate of pay or determine the jobs they worked on. Plaintiffs each quit their jobs with Metal Systems in December 2016; Acevedo informed a Metal Systems foreman that he was quitting and Flecha informed Staven directly. Neither Staven nor anyone else at Metal Systems notified defendant of the resignations.

5

(Defendant says that it has never directed nor influenced Metal Systems to terminate, discipline or replace any Metal Systems employees working on one of defendant's projects or job sites.  Plaintiffs attempt to dispute this with a single example:  Flecha says that in early 2017, after he had quit his employment with Metal Systems, he contacted Staven about getting his job back and "Mr. Staven told [Flecha] that Metal Systems had plenty of available work, but that he was not sure whether 'they' would work with [Flecha].  [Flecha] understood that by 'they,' Mr. Staven was referring to [defendant]."  Id. ¶ 53; Flecha Decl., Dkt. #48 ¶ 14.)

OPINION

Defendant Pioneer Roofing, LLC moved for summary judgment on the ground that it did not employ the named plaintiffs or any other Metal Systems employees, either directly or through a joint employment relationship.  The Fair Labor Standards Act and Wisconsin's analog laws regulate and prohibit a number of wage and pay practices, but these are generally applicable only to *employers*.  29 U.S.C. §§ 201-219; Wis. Stat. §§ 109.01-12.  (As discussed below, Wisconsin's prevailing wage law is the exception to that general rule.)  Accordingly, defendant contends in its motion that it cannot be liable for any of plaintiffs' claims because it was not their employer under federal or state law.

A.  Claims Under the Fair Labor Standards Act

The Fair Labor Standards Act defines an employer as "any person acting directly or

indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). It is undisputed that during the relevant time period, plaintiffs Flecha and Acevedo each worked for Metal Systems, LLC, and that Metal Systems was their direct employer. The core issue on which the parties disagree is simply whether defendant also exercised sufficient control over plaintiffs' working conditions that the law should treat defendant as plaintiffs' employer as well.

Under the Fair Labor Standards Act, whether a party is an "employer" is a question of law that requires a context-specific review of the facts of each particular case and work relationship, the ultimate focus of which is on the "economic reality" of the situation. Karr v. Strong Detective Agency, Inc., 787 F.2d 1205, 1206-07 (7th Cir. 1985) (quoting Goldberg v. Whitager House Co-op, Inc., 366 U.S. 28, 33 (1961)). Where, as here, plaintiffs allege that two different parties are their employers, it is necessary to determine the nature of the alleged employment relationship. "[F]or a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee." Moldenhauer v. Tazewell-Pekin Consolidated Communications Center, 536 F.3d 640, 644 (7th Cir. 2008). No simple or rigid test exists that allows a court to determine conclusively when such control is present in any given case. Rather, "[t]he joint-employment analysis turns—as does any assessment of a putative employment relationship—on the totality of the circumstances, with a particular focus on the control exercised by the alleged employer over a person's working conditions." Bridge v. New Holland Logansport, Inc., 815 F.3d 356, 363 (7th Cir. 2016).

In Moldenhauer, 536 F.3d at 644, the Court of Appeals for the Seventh Circuit

identified several relevant factors to consider in assessing an alleged employer's level of control over a worker for purposes of the Fair Labor Standards Act, including whether the purported employer (1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules or conditions of payments; (3) determined the rate and method of payment; and (4) maintained employment records. Although the court of appeals cautioned against a view that "these are the only relevant factors, or even the most important," it suggested them as a helpful guide in applying an otherwise nebulous standard for employer "control." Id.

It is undisputed that defendant had no involvement in Metal Systems' decisions to hire plaintiffs and that it lacked the general power to hire and fire Metal Systems employees. Plaintiffs have not adduced any evidence that defendant supervised or controlled their individual work schedules or any of the conditions of their employment, or that it determined the rate or method of payment for any employee of Metal Systems. It is further undisputed that defendant kept no records whatsoever related to any individual Metal Systems employees and that defendant was not notified when plaintiffs resigned their employment with Metal Systems.

Although the Moldenhauer factors weigh strongly against a finding that defendant was plaintiffs' employer, plaintiffs highlight several other factors that they contend show that defendant exercised the requisite control over their employment. Plaintiffs emphasize the two companies' close business cooperation, both contractual and de facto, contending that Metal Systems is substantially dependent on defendant for its economic viability. This

argument is not very persuasive in light of the undisputed facts that Metal Systems has worked on 811 projects for approximately 50 different clients throughout Wisconsin since December 2013, and that since November 2014, only 110 of those projects were for defendant. Similarly, plaintiffs emphasize the companies' overlapping ownership and management, seeking to show that acting either directly or through Boettcher and Monogue, defendant exercises more power and influence over Metal Systems' business operations than meets the eye. This may be true, but these facts are relevant only to the extent that they demonstrate defendant's control over the terms and conditions of plaintiffs' employment, as opposed to Metal Systems' general business operations. Bridge, 815 F.3d at 363.

Plaintiffs point to evidence that Staven consulted with Monogue regarding employee compensation and that Monogue had some role determining, calculating or accounting for the way plaintiffs' work hours would be compensated. Plaintiffs cite Espenscheid v. DirectSat USA, LLC, 09-cv-625-bbc, 2011 WL 10069108 (W.D. Wis. 2011), for the proposition that "a joint employment relationship may exist where one employer controls the day to day work activities of the employees, while the other performs human resources functions such as hiring, discipline, and termination." Plts.' Opp. Br., Dkt. #44 at 14-15. The problem for plaintiffs is that Metal Systems' status as their employer is entirely undisputed, whereas the evidence relating to Monogue does not give rise to any reasonable inference that he was performing any accounting or compensation duties as an agent or representative of defendant, rather than in his capacity as a member of Metal Systems.

Plaintiffs also contend that their evidence shows that defendant's personnel exercised

9

specific on-site authority and control over their sheet metal installation work on defendant's job sites. Defendant points out that much of plaintiffs' testimony on this issue is vague and nonspecific, but I agree with plaintiffs that it creates a factual dispute as to the level of defendant's control over plaintiffs' day-to-day work activities while engaged on defendant's projects. The critical question is how relevant this narrower dispute is to the broader question of defendant's control over the terms and conditions of plaintiffs' employment with Metal Systems generally.

As defendant notes, the day-to-day supervision of Metal Systems employees' sheet metal work at its job sites has nothing to do with the issues that give rise to plaintiffs' claims (that is, improper wage and pay practices). As another district court has noted, for control to matter, "[t]he authority exercised must be related to the violation." Schneider v. Cornerstone Pints, Inc., 148 F. Supp. 3d 690, 697-98 (N.D. Ill. 2015). Plaintiffs are correct that no controlling authority holds specifically that it is necessary to show a relationship between the employer's control and the violation at issue in order to demonstrate employer control under the Fair Labor Standards Act. However, there is a certain logic to defendant's argument, especially because almost all of plaintiffs' specific evidence relates to defendant's control over the particulars of the sheet metal work performed by Metal Systems as a subcontractor on defendant's construction sites, rather than to defendant's control over the general parameters of plaintiffs' employment.

Plaintiffs rely heavily on the Supreme Court's decision in Rutherford Food Corp. v. McComb, 331 U.S. 722 (1947), but I agree with defendant that Rutherford Food does not

apply in this case. In that case, the Supreme Court concluded that a slaughterhouse was a joint employer of meat workers who worked directly for an independent contractor providing hired labor to the slaughterhouse. Id. at 726. The holding in Rutherford Food was that, "in certain circumstances, an entity can be a joint employer under the FLSA even when it does not hire and fire its joint employees, directly dictate their hours, or pay them." Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61, 70 (2d Cir. 2003). However, the primary factors that led to that conclusion are not present in this case or applicable to it. The Supreme Court emphasized that the meat workers in Rutherford Food "did a specialty job on the production line," and their work was "a part of the integrated unit of production" at the slaughterhouse. Rutherford Food, 331 U.S. at 729-30. Even more important to the outcome was the Court's finding that the meat workers "had no business organization that could or did shift as a unit from one slaughterhouse to another," and their employment took place entirely on the production line at the same slaughterhouse, whose manager closely monitored their productivity. Id.

The Court of Appeals for the Seventh Circuit has held that the rationale of Rutherford Food applies where similar circumstances are present. Reyes v. Remington Hybrid Seed Co., Inc., 495 F.3d 403, 408 (7th Cir. 2007). In Reyes, the court concluded that an agricultural company was a joint employer under the Fair Labor Standards Act because

> Zarate [a recruiter of migrant laborers for seasonal farm work] had no business organization that he could shift from one place to another; he put together a crew for Remington [a seed company] alone. . . . Just as in Rutherford Food, a firm hired a single person to supply a labor force rather than a defined product (such as a working elevator or a legal brief). And the result, as in Rutherford Food, was a single operation under "common control" (§ 203(s)) rather than a

11

> distinct activity—for example, plumbing repairs—conducted by an independent contractor who appears, does a discrete job, and leaves again.

Reyes, 495 F.3d 403, 408 (7th Cir. 2007).

Here, by contrast, it is undisputed that plaintiffs worked for Metal Systems, which is a company that provides sheet metal fabrication and installation services to many different clients other than defendant, and has a business organization that could and did shift as a unit from one construction project or job site to another. Id.; Rutherford Food, 331 U.S. at 729-30. The evidence in this case would not permit a conclusion that Metal Systems was merely an agent providing labor to defendant, as in Reyes and Rutherford Food.

Plaintiffs argue that defendant's project supervision on its job sites makes it a joint employer of Metal Systems employees like themselves, but I agree with defendant that this is not enough. As the court held in Zheng,

> Rutherford indicates also that such extensive supervision weighs in favor of joint employment only if it demonstrates effective control of the terms and conditions of the plaintiff's employment. . . . By contrast, supervision with respect to contractual warranties of quality and time of delivery has no bearing on the joint employment inquiry, as such supervision is perfectly consistent with a typical, legitimate subcontracting arrangement.

Zheng, 355 F.3d at 75. The weight of the undisputed evidence here suggests strongly that defendant's supervision of Metal Systems' sheet metal work on its job sites was in the nature of inspection for quality, in accordance with the companies' subcontracting arrangement. In such a situation, a general contractor may possess control over the subcontractor's work and work product on a given project, but it does not follow necessarily that the general contractor possesses control over the working conditions of the subcontractor's employees. Zheng, 355

F.3d at 75; Moreau v. Air France, 343 F.3d 1179, 1188 (9th Cir. 2003) (noting lack of authority that correlates specific instructions to service provider with "control" over service companies' employees or their working conditions), amended and superseded on other grounds by Moreau v. Air France, 356 F.3d 942 (9th Cir. 2004). "[I]t would be a foolish business practice to contract with a company to perform a service, but provide it with little or no guidance on exactly what services are to be performed." Moreau, 343 F.3d at 1188.

In sum, considering Moldenhauer and the additional relevant factors plaintiffs have identified, I conclude that plaintiffs' evidence would not permit a rational fact finder to conclude that defendant had sufficient control over the terms and conditions of plaintiffs' employment to make it their employer under the Fair Labor Standards Act. Accordingly, defendant's motion for summary judgment will be granted as to that claim.

### B.  Claims Under Wisconsin State Law

To prevail on their state-law overtime and straight time pay claims, plaintiffs must show that they are employees who are "employed by an employer" that is "engaged in any activity, enterprise or business employing one or more persons within the state." Wis. Stat. § 109.01(2). This again raises the question about defendant's status as plaintiffs' purported "employer." Other judges in this court have treated the inquiry under Wisconsin wage and hour law as substantially similar to the inquiry under the Fair Labor Standards Act. Pope v. Espeseth, Inc., 228 F. Supp. 3d 884, 891 (W.D. Wis. 2017) (Wisconsin wage statutes' employer "definitions are similar to the definition of employer under the FLSA," and "require

13

at least as much of a showing of control as the FLSA") (citing Mays v. Grand Daddy's, LLC, No. 14-cv-461-slc, 2015 WL 4373565 (W.D. Wis. July 15, 2015)). See also Montana v. JTK Restorations, LLC, No. 14-cv-487, 2015 WL 5444945 at *2 (E.D. Wis. Sept. 14, 2015).

Because plaintiffs have failed to show that defendant would be treated as an employer of Metal Systems' employees under the Fair Labor Standards Act, it follows that they also have failed to satisfy the definition of employer under the Wisconsin wage statutes. Therefore, I am granting defendant's motion for summary judgment as to plaintiffs' Wisconsin overtime and straight time pay claims. Pope, 228 F. Supp. 3d at 891 ("The evidence plaintiffs adduce in support of their contention that Fish is an employer under the FLSA does not support a finding that Fish is an employer under Wisconsin law, either. . . . So the court will grant summary judgment that Fish is not plaintiffs' employer under Wisconsin wage and hour law."); Mays, 2015 WL 4373565 at *2-4 (dismissing claims under both the FLSA and Wisconsin wage law because defendant was not an "employer" as defined by the FLSA).

However, plaintiffs' prevailing wage claim under Wis. Stat. §§ 66.0903 and 779.14 is different because a party such as defendant can still be found liable for a violation of that provision even if it is not plaintiffs' "employer." Under Wisconsin's prevailing wage law, even a general contractor "has a duty to ensure that all workers on the job—including those employed by subcontractors—are paid the prevailing wage." Building and Construction Trades Council of South Central Wisconsin v. Waunakee Community School District, 585 N.W.2d 726, 728, 221 Wis. 2d 575, 580 (Wis. App. 1998) (citing Strong v. C.I.R., Inc., 184 Wis. 2d 619, 624, 516 N.W.2d 719, 721-22 (1994)). Although defendant is not liable to

plaintiffs on their claim that it was plaintiff's employer, I cannot say that it could not be liable as a general contractor for Metal Systems' alleged violations.

Finally, defendant argues that the court should relinquish supplemental jurisdiction over plaintiffs' remaining state law claim, but I decline to do so. Plaintiffs are already pursuing federal and state claims against defendant Metal Systems, and they will presumably be moving to certify a class and FLSA collective action as well, so it makes sense for the court to retain supplemental jurisdiction over plaintiffs' Wisconsin prevailing wage claim against defendant, which arises out of the same set of facts as the other remaining claims. Ervin v. OS Restaurant Services, Inc., 632 F.3d 971 (7th Cir. 2011); Rigsby v. American Family Mutual Insurance Co., 14-cv-23-bbc, 2014 WL 1515493, at *2 (W.D. Wis. 2014).

Accordingly, defendant Pioneer will remain a defendant only with respect to plaintiffs' Wisconsin prevailing wage claim. That claim will go forward as scheduled, along with all claims against defendant Metal Systems.

ORDER

IT IS ORDERED that

1. The motion for leave to file a sur-reply brief filed by plaintiffs Joshua Flecha and Luis Acevedo, dkt. #55, is GRANTED.

2. Defendant Pioneer Roofing, LLC's motion for summary judgment, dkt. #30, is GRANTED with respect to plaintiffs' Fair Labor Standards Act and Wisconsin straight time and overtime pay claims against defendant Pioneer Roofing, LLC, and those claims are

DISMISSED. The motion is DENIED in all other respects.

Entered this 16th day of October, 2017.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge