IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOSHUA FLECHA and
LUIS ACEVEDO,

                                                    OPINION AND ORDER

               Plaintiffs,

                                                    16-cv-800-bbc

     v.

METAL SYSTEMS, LLC and
PIONEER ROOFING, LLC,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       Plaintiffs Joshua Flecha and Luis Acevedo brought this putative class and collective action on behalf of themselves and other similarly situated individuals and employees of defendants Metal Systems, LLC, and Pioneer Roofing, LLC. According to plaintiffs, defendants failed to compensate them for certain work, failed to compute their overtime pay properly and failed to pay them prevailing wages, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and Wisconsin state law.

       In an order entered on October 16, 2017, I granted defendant Pioneer's motion for summary judgment on plaintiffs' Fair Labor Standards Act claim, as well as their state law claims for overtime and straight time pay, after finding that defendant Pioneer did not qualify as plaintiffs' employer within the meaning of the laws governing those claims. Dkt. #57. Plaintiffs believe that the order should be reconsidered because the court erred in three

1

respects: (1) ignoring evidence that Pioneer provided direct instructions to plaintiffs on securing sheet metal to roofs, waste disposal and safety when determining that Pioneer's control over plaintiffs' work was limited to quality control inspections authorized by a subcontract; (2) finding that accountant Brian Monogue was not acting on behalf of Pioneer when he computed payroll for Metal Systems employees; and (3) using the wrong definition of "employer" for Wisconsin's wage and hour laws. Dkt. #58. Also before the court are plaintiffs' motions to file a reply brief in support of their motion to reconsider, dkt. #61, and for leave to file an amended complaint to (1) assert an additional theory in support of their position that defendants cannot take advantage of a statutory exemption for overtime, 29 U.S.C. §207(g)(2); and (2) propose a second class under Fed. R. Civ. P. 23, which would include all workers who were not paid the full journeyman rate when they worked on prevailing wage Pioneer jobsites, regardless whether they were "employees" of Pioneer. Dkt. #62. For the reasons stated below, I am denying all three of plaintiffs' motions. In addition, I will direct the clerk of court to set a telephone conference before Magistrate Judge Crocker for the purpose of determining the remainder of the schedule in this case.

OPINION

A. Motion for Reconsideration and Motion for Leave to File Reply Brief

To prevail on their motion for reconsideration under Fed. R. Civ. P. 59(e), plaintiffs must either present newly discovered evidence or establish a manifest error of law or fact. Obriecht v. Raemisch, 517 F.3d 489, 494 (7th Cir. 2008); Oto v. Metropolitan Life

Insurance Co., 224 F.3d 601, 606 (7th Cir. 2000) (citation omitted). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" Oto, 224 F.3d at 606. "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." Caisse Nationale de Credit Agricole v. CBI Industries, Inc., 90 F.3d 1264, 1270 (7th Cir. 1996).

Defendant Pioneer Roofing moved for summary judgment on the ground that it did not employ the named plaintiffs or any other Metal Systems employees, either directly or through a joint employment relationship. (In discussing the motion for reconsideration I will use the term "defendant" to refer to defendant Pioneer unless otherwise noted.) As explained in the summary judgment order, "for a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee." Moldenhauer v. Tazewell-Pekin Consolidated Communications Center, 536 F.3d 640, 644 (7th Cir. 2008). No simple or rigid test exists that allows a court to determine conclusively when such control is present in any given case. Rather, "[t]he joint-employment analysis turns—as does any assessment of a putative employment relationship—on the totality of the circumstances, with a particular focus on the control exercised by the alleged employer over a person's working conditions." Bridge v. New Holland Logansport, Inc., 815 F.3d 356, 363 (7th Cir. 2016). Some relevant factors include whether the purported employer (1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules or

3

conditions of payments; (3) determined the rate and method of payment; and (4) maintained employment records. Moldenhauer, 536 F.3d at 644 ("[T]hese are [not] the only relevant factors, or even the most important.").

Repeating an argument that they raised in response to defendant's motion for summary judgment, plaintiffs say there is evidence that defendant's staff gave them very specific instructions on how and where to install sheet metal on defendant's job sites, what safety precautions to use and how to dispose of waste on the job site. Although I agreed with plaintiffs that this evidence created a factual dispute about the level of defendant's control over plaintiffs' day-to-day work activities on defendant's projects, I pointed out that this narrow dispute was not relevant to the broader question, which focused on defendant's control over the terms and conditions of plaintiffs' employment with Metal Systems generally and therefore had nothing to do with the issues that gave rise to plaintiffs' claims of improper wage and pay practices. Riordan v. Kempiners, 831 F.2d 690, 694 (7th Cir. 1987) (entity was employer only where it "had supervisory authority over the complaining employee and was responsible in whole or part for the alleged [Fair Labor Standards Act] violation."); Schneider v. Cornerstone Pints, Inc., 148 F. Supp. 3d 690, 697-98 (N.D. Ill. 2015) (For control to matter, "[t]he authority exercised must be related to the violation."). See also Zheng v. Liberty, 355 F.3d 61, 75 (2d Cir. 2003) ("[S]upervision with respect to contractual warranties of quality and time of delivery has no bearing on the joint employment inquiry, as such supervision is perfectly consistent with a typical, legitimate subcontracting arrangement."). In fact, plaintiffs did not dispute defendant's proposed

4

finding of fact that defendant has never been involved with recording, reviewing, verifying or approving time worked by Metal Systems' employees.

Plaintiffs also make the same assertions they made before with respect to the role of defendant's accountant, Brian Monogue, in determining, calculating or accounting for the way Metal Systems' employees (including plaintiffs) would be compensated. Monogue is a member of Metal Systems and an owner of and accountant for defendant. Plaintiffs contend that Monogue "caused at least a portion of [their] injury by" by plugging in data provided by Metal Systems to a computer software system that Monogue programmed (incorrectly) to compute compensation, resulting in the miscalculation of plaintiffs' overtime pay. In the summary judgment order, I found that the evidence relating to Monogue did not give rise to a reasonable inference that he was performing accounting or compensation duties as an agent or representative of *defendant*, rather than as a member of Metal Systems. Plaintiffs now argue that I ignored the fact that Metal Systems pays defendant $3,000 a month for Monogue's accounting services, but that fact does not change the analysis. In fact, it reinforces the point that Monogue is acting on behalf of Metal Systems when he is performing paid, administrative work for that company. Moldenhauer, 536 F.3d at 645 ("Moldenhauer stresses the 'laundry list' of services that [her primary employer] received from [the City of] Pekin, including payroll and insurance providers. But . . . [her employer] contracted with [the city] for the provision of these services, which is insufficient to establish a joint-employment relationship.").

5

Plaintiffs contend that they should be permitted to file a short reply brief in support of their motion for reconsideration so they may "explain that the methodology chosen by Monogue made a significant difference to the overtime pay rates received by Metal Systems' employees" and that Monogue acted "in his capacity as an employee of Pioneer" and not simply in the type of administrative role described in Moldenhauer. Dkt. #61 at 1-2. However, these are essentially the same arguments plaintiffs made in their two previous briefs. Moreover, plaintiffs had the opportunity to present their arguments concerning Monogue's role and the applicability of Moldenhauer in their original response to defendant's motion for summary judgment. Goodman v. National Security Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010) ("We often call summary judgment, the 'put up or shut up' moment in litigation, . . . by which we mean that the non-moving party is required to marshal and present the court with the evidence she contends will prove her case."). See also D.Z. v. Buell, 796 F.3d 749, 756 (7th Cir. 2015) (court not obligated to sift through record in search of evidence to support plaintiff's claim). In any event, plaintiffs have failed to present any convincing evidence that would support a reasonable inference that Monogue was acting on behalf of defendant in performing accounting services for Metal Systems. Metal Systems supplied Monogue the necessary data and paid him for his services, and apart from allowing Metal Systems to use Monogue as an accountant, defendant had no other role in setting or calculating the compensation rate for plaintiffs. Therefore, I am denying plaintiffs' motion for leave to file a reply brief.

In sum, plaintiffs have not established that it was a "manifest error" to conclude that when the undisputed evidence in this case is considered as a whole, it shows that defendant's supervision of work on its job sites was in accordance with the companies' subcontracting arrangement and did not amount to such control over the working conditions of Metal Systems' employees as to make defendant liable as plaintiffs' employer under the Fair Labor Standards Act.

Plaintiffs argue that it was error to conclude that Wisconsin would apply the Fair Labor Standards Act's multi-factored definition of "employer," which includes an analysis of the "economic reality" of the relationship. Summ. Jmt. Order, dkt. #57 at 7-8 (citing New Holland Logansport, Inc., 815 F.3d at 363 (assessment of employment relationship depends on totality of circumstances, with particular focus on control exercised by alleged employer over working conditions)); id. at 13-14 (citing Pope v. Espeseth, Inc., 228 F. Supp. 3d 884, 891 (W.D. Wis. 2017) (definitions of "employer" in Wisconsin wage statutes "are similar to the definition of employer under the [Fair Labor Standards Act]" and "require at least as much of a showing of control as the FLSA")). Plaintiffs repeat the argument they raised previously that "employer" should be defined as "having control or direction of any person employed at any labor or responsible directly or indirectly for the wages of another," in accordance with Wisconsin's minimum wage regulations, Wis. Admin. Code § DWD 272.01(5), but they fail to explain why it was manifest error to follow the lead of other courts in this circuit and apply the federal definition of employer to plaintiffs' state law wage claims.

7

Plaintiffs also argue for the first time in their motion for reconsideration that the Wisconsin Supreme Court has defined "employer" within the meaning of the safe place statute, Wis. Stat. § 101.11(4), as one who has the right to control the details of the employee's work, regardless whether that control was ever exercised. Wittka v. Hartnell, 46 Wis. 2d 374, 382 (1970). Plaintiffs should have raised this argument in response to defendant's motion for summary judgment. Caisse Nationale, 90 F.3d at 1270. However, their failure to do so is immaterial because their new arguments on that statute are not convincing. As defendant points out, the existence of an employment relationship between the plaintiff and defendant is not a prerequisite to liability under the safe place statute as it is under the Fair Labor Standards Act and Wisconsin's wage claim laws. Ribarich v. United States, 2015 WL 1321661, at *2 (W.D. Wis. Mar. 24, 2015) (explaining that safe place statute applies to employer *or* owner of place of employment where employee is directly or indirectly employed). Accordingly, the motion for reconsideration will be denied.

B.  Motion to Amend

Under Fed. R. Civ. P. 15(a)(2), a court should "freely give leave" to amend a complaint "when justice so requires." Generally, a district court should "allow amendment unless there is a good reason—futility, undue delay, undue prejudice, or bad faith—for denying leave to amend." Life Plans, Inc. v. Security Life of Denver Insurance Co., 800 F.3d 343, 357-58 (7th Cir. 2015) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Plaintiffs seek to file a second amended complaint to add allegations related to an overtime exemption

8

for piece rate work and to define a second Rule 23 class with respect to prevailing wage rate claims against defendant Pioneer. (Although the proposed second amended complaint also assumes and reasserts allegations that Pioneer was plaintiffs' employer, the parties agree that the court resolved this issue in Pioneer's favor in ruling on the motion for summary judgment.) Plaintiffs contend that there is no undue delay and that defendants will not suffer prejudice because the court has not set any scheduling deadlines in this case beyond the briefing deadlines for the early-filed motion for summary judgment. Both defendants oppose the proposed amendments on the grounds that the allegations concerning the exemption are unnecessary and the proposed class definition is too broad, comes too late and is futile. I agree with defendants' objections to the proposed amendments and will deny plaintiffs' motion for leave to file a second amended complaint for the reasons explained below.

1. Exemption

Plaintiffs say they want to assert an "additional theory" as to why defendants cannot take advantage of the statutory overtime exemption in 29 U.S.C. § 207(g)(2), which provides that "in the case of an employee performing two or more kinds of work for which different hourly or piece rates have been established, [the amount paid to the employee for the number of hours worked by him] is computed at rates not less than one and one-half times such bona fide rates applicable to the same work when performed during non-overtime hour." Specifically, they want to add allegations to make it clear that they performed the

9

same types of work regardless what project they worked on and that defendants did not pay them different rates of pay for different types of work. Prop. Second Amd. Cpt., dkt. #62, exh. #1 at ¶¶ 27, 45. However, it is not necessary for plaintiffs to amend their complaint to add additional arguments or facts in response to potential defenses that may be raised by defendants. If defendants raise this exemption in a future motion for summary judgment or at trial, plaintiffs will be able to challenge its application at that time.

2. New class definition

Plaintiffs also seek to define an additional Rule 23 class consisting of "all employees who performed any work on any prevailing wage Pioneer jobsite for which Pioneer's construction contract was not completed by December 2, 2015, and was not paid at the full prevailing wage rate for said work." Dkt. #62, exh. #1 at ¶ 35. They contend that the proposed class allows for claims that Pioneer employees may have against Pioneer as a general contractor, which I specifically permitted in the summary judgment order. Plaintiffs are correct that despite finding that Pioneer was not plaintiffs' employer, I left open the possibility that Pioneer could be held liable as a general contractor for Metal Systems' alleged violations of Wisconsin's prevailing wage law. Dkt. #57 at 14 ("[E]ven a general contractor like Pioneer 'has a duty to insure that all employees on the job—including those employed by subcontractors—are paid the prevailing wage.'") (quoting Building and Construction Trades Council of South Central Wisconsin v. Waunakee Community School District, 585 N.W.2d 726, 728, 221 Wis. 2d 575, 580 (Wis. App. 1998)). However, as defendants point

out, plaintiffs' new proposed class definition includes not only employees of Metal Systems who worked on projects for which Pioneer served as a general contractor, but all employees of Pioneer who may not have received a prevailing wage on Pioneer's own projects. Because the named plaintiffs are not Pioneer employees, they would not be representative of a class that included all Pioneer employees.

Further, adding stand-alone prevailing wage claims against Pioneer would mean broadening the initial scope and focus of this lawsuit, which I am not willing to do at this stage. Plaintiffs initially filed this lawsuit against Metal Systems, dkt. #1, and then filed a first amended complaint to add Pioneer as a defendant on the ground that Pioneer acted as plaintiffs' joint employer or at least controlled plaintiffs' work to an extent that it could be held jointly liable for the alleged wage violations. Dkt. #15. Because I have already considered and ruled on the extent of Pioneer's liability with respect to plaintiffs and those similarly situated to them in this case, adding different claims against Pioneer that are broader in scope than plaintiffs' original claims would be unfair to defendants and cause undue delay in the progress of this case. Sanders v. Venture Stores, Inc., 56 F.3d 771, 774 (7th Cir. 1995) (denial of motion for leave to amend not abuse of discretion after defendant filed successful motion for summary judgment).

Accordingly, I am denying plaintiffs' motion to amend because the amendment would be futile and would cause undue prejudice to defendant Pioneer. Although plaintiffs may wish to refine their proposed class definition in conjunction with a motion for class certification, they will not be allowed to bring new or additional claims against Pioneer.

ORDER

IT IS ORDERED that

1. The motions filed by plaintiff Joshua Flecha and plaintiff Luis Acevedo motion for reconsideration, dkt. #58; for leave to file a reply brief, dkt. #61; and for leave to file a second amended complaint, dkt. #62, are DENIED.

2. The clerk of court is directed to set a telephonic status conference before Magistrate Judge Crocker for the purpose of setting the remainder of the schedule in this case.

Entered this 22d day of February, 2018.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge